# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOUROTH CHATTERJI, | : | |
| | : | |
| Plaintiff, | : | No. |
| | : | |
| v. | : | |
| | : | |
| CITY OF PITTSBURGH and ASSISTANT | : | **JURY TRIAL DEMANDED** |
| CHIEF OF THE PITTSBURGH BUREAU | : | |
| OF POLICE LINDA BARONE, | : | |
| individually, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Souroth Chatterji ("Officer Chatterji") hereby files this Complaint as follows:

### INTRODUCTION

1. Officer Chatterji is a United States Army veteran who served two tours in Iraq and became employed as a patrol officer with the Pittsburgh Bureau of Police (the "PBP") in 2012. In 2015, Officer Chatterji was ordered by former Chief of the PBP, Cameron McLay ("Former Chief McLay"), and Chief of Staff Commander Eric Holmes ("Chief of Staff Holmes"), to become part of a work group within the PBP to investigate the information technology systems it was utilizing. Pursuant to that investigation, Officer Chatterji reported to Former Chief McLay and Chief of Staff Holmes his good faith understanding that the PBP had paid millions of dollars to B-Three Solutions, Inc. ("B-Three Solutions") for updates and upgrades to its information technology systems that the investigation revealed were neither completed nor implemented.

2. In response to being ordered by Former Chief McLay and Chief of Staff Holmes to investigate the PBP's information technology systems, Officer Chatterji was threatened and intimidated by employees within the PBP and the City of Pittsburgh ("Pittsburgh"), including Assistant Chief Barone (defined *infra*). Assistant Chief Barone told Officer Chatterji that his career with the PBP was over and that "chiefs come and go," referring to Former Chief McLay, and that he would ultimately be the one that suffered for investigating B-Three Solutions. During and after the investigation, officers under Assistant Chief Barone's direct control and supervision, and who were knowingly aligned with her, also made derogatory and racist remarks to Officer Chatterji that were based on his national origin, Indian, calling him things like "sandn*****," "Haji" and "Muhammed," and telling him that no "brown" person will be promoted to sergeant in the PBP.

3. Officer Chatterji ultimately attempted to continue the career he chose with the PBP following the resignation of Former Chief McLay. Officer Chatterji thus prepared for and took the examination for promotion to the rank of sergeant when Former Chief McLay resigned. Despite scoring number one overall among all qualified applicants for promotion to the rank of sergeant, Officer Chatterji was denied the promotion to which he was entitled in retaliation for the information he reported pursuant to the investigation that Former Chief McLay and Chief of Staff Holmes had ordered him to conduct, and to discriminate against him because of his national origin. He was never afforded a hearing for his non-promotion. Moreover, in connection with being denied the sergeant's promotion, Assistant Chief Barone made false and defamatory statements about Officer Chatterji, calling him dishonest and untrustworthy, stating that he was denied the promotion to sergeant because of policy and rule violations including incompetence and theft.

4. Assistant Chief Barone also initiated a baseless complaint against Officer Chatterji with the Office of Municipal Investigations (the "OMI") for his investigation of B-Three Solutions and her role or relationship with that company when Former Chief McLay resigned. Assistant Chief Barone has since expressly ordered that Officer Chatterji not be promoted to sergeant, citing the baseless investigation that she had initiated with the OMI as the reason for denying the promotion. At no other time has an otherwise qualified officer in the PBP been denied a promotion to sergeant because of an ongoing OMI investigation.

5. Officer Chatterji brings this action pursuant to 42 U.S.C. § 1983 against Pittsburgh and Assistant Chief Barone for depriving him of his rights guaranteed by the Fourteenth Amendment of the United States Constitution and Pennsylvania's Whistleblower Law, 43 Pa.C.S.A. § 1421, *et seq.* (the "Whistleblower Law").

## PARTIES

6. Officer Chatterji is an adult individual residing in the Western District of Pennsylvania.

7. Pittsburgh is a city of the second class located in the Commonwealth of Pennsylvania. Pittsburgh operates and maintains the PBP, which has a principal place of business at 1203 Western Avenue, Pittsburgh, Pennsylvania 15233. Pittsburgh also maintains and controls a Department of Law, which has a principal place of business at 414 Grant Street, 313 City-County Building, Pittsburgh, Pennsylvania 15219.

8. Defendant Linda Barone (interchangeably, "Assistant Chief Barone" or "Commander Barone") is an adult individual residing in Allegheny County, Pennsylvania. Assistant Chief Barone is currently employed as the Assistant Chief of the PBP, and as the Deputy Director of the Department of Public Safety. Assistant Chief Barone was previously

employed as a Commander of the PBP. Assistant Chief Barone is sued in her individual capacity.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because each claim arose in the Western District of Pennsylvania and because Officer Chatterji resides in this District.

## FACTS

### Background

11. Officer Chatterji is a United States Army veteran who served two tours in Iraq.

12. In 2012, Officer Chatterji became employed by the PBP as a patrol officer and served in that capacity at all relevant times.

13. In early 2015, Officer Chatterji was transferred to the PBP's headquarters to work with Former Chief McLay and Chief of Staff Holmes.

14. At the time of Officer Chatterji's transfer, Former Chief McLay had organized a work group to investigate how the PBP could upgrade its information technology systems.

15. Officer Chatterji was ordered by Former Chief McLay to become part of this work group and investigate the information technology systems being utilized within the PBP.

16. According to Former Chief McLay, Officer Chatterji was responsible for reporting to both himself and Chief of Staff Holmes concerning the results of his investigation.

4

17. Around October 2015, Former Chief McLay and Chief of Staff Holmes tasked Officer Chatterji with gathering information on a new Report Management System (known as an "RMS System") and a computer-aided dispatch system (known as a "CAD System") for the PBP.

18. Specifically, at that time, Former Chief McLay and Chief of Staff Holmes tasked Officer Chatterji with gathering information on RMS and CAD Systems that had been created by TriTech Software Systems, formerly known as Tiburon ("Tiburon").

19. Its purpose was two-fold: (i) compare the PBP's current RMS System, which was the Automated Police Report System ("APRS") by B-Three Solutions, Inc. ("B-Three Solutions"), with the Tiburon RMS System, and (ii) compare the PBP's current CAD System, known as Premier by Motorola, which worked in conjunction with the APRS, with the Tiburon CAD System.

20. Through his investigation, Officer Chatterji learned that the Tiburon RMS and CAD Systems offered numerous free upgraded versions of the PBP's Premier CAD System and APRS.

21. Officer Chatterji also learned that the Tiburon RMS System was compliant with the National Incident-Based Reporting System ("NIBRS"), which is an incident-based reporting system used by law enforcement agencies in the United States for collecting and reporting crime data.

22. Officer Chatterji learned that the APRS by B-Three Solutions was neither NIBRS compliant nor usable for crime data reporting.

5

23. Officer Chatterji learned that the Tiburon RMS System not only provided an obviously better cost-point for the PBP, but also significantly increased officer safety through automation and interfaced with law enforcement on a national basis.

24. Officer Chatterji learned that the APRS implemented by B-Three Solutions was outdated and likely overpriced compared to industry standards, especially the free Tiburon systems, which could interface with a CAD-based RMS system under control of the same company.

25. Officer Chatterji reported all this information to Former Chief McLay and Chief of Staff Holmes as part of his investigation into the PBP's information technology systems.

26. In response, Former Chief McLay and Chief of Staff Holmes ordered Officer Chatterji to conduct a full internal audit of the information technology systems the PBP was implementing through B-Three Solutions.

27. The ensuing audit performed by Officer Chatterji uncovered various other deficiencies in the information technology systems that B-Three Solutions had been paid to implement within the PBP.

28. The audit revealed that the system that B-Three Solutions had implemented for producing documentation for an officer's daily activities (known as "daily activity sheets") was comprised of multiple screen shots only and no source code.

29. Because there was no source code, an officer's daily activities could not be automated into daily activity sheets because the system had not been written into a computer in any readable format.

30. Because the system implemented by B-Three Solutions for producing daily activity sheets did not have software to make it functional, police officers, detectives and

supervisors for the PBP were required to manually produce their daily activity sheets, often duplicating efforts that could easily lead to errors in reports.

31. The audit revealed that the PBP paid $110,000 to B-Three Solutions to automate this process in 2014, which was still not functional as of the date of the investigation.

32. This information was reported by Officer Chatterji to Former Chief McLay and Chief of Staff Holmes, who instructed him to continue auditing B-Three Solutions.

33. The ongoing audit of B-Three Solutions further revealed that the PBP paid B-Three Solutions in full for numerous other projects that were not in use.

34. In 2012, the PBP paid B-Three Solutions $150,000 to automate and standardize the chain of custody process for property and evidence seized by the PBP through a system known as "Evidence Barcoding."

35. Although this project was intended to digitalize the evidence process within the PBP, thus eliminating handwritten evidence forms and chains of custody, it was never implemented.

36. Another such project was for "Case Management Reports," which is a part of the "Case Management" system within the PBP, and an off-shoot of which was the "Confidential Report System."

37. In 2011, the PBP paid B-Three Solutions $75,000 to automate and streamline the "Confidential Report Systems," which is used by homicide detectives to confidentially exchange information concerning homicide cases.

38. Although B-Three Solutions was paid in full for this project, it was never automated, thus requiring police officers, detectives and supervisors to manually input information concerning their investigations instead of utilizing an automated system.

39. Officer Chatterji learned through the ongoing audit that the PBP was paying B-Three Solutions $300,000 for annual software maintenance, which would have otherwise been free from a different RMS provider.

40. Officer Chatterji also learned through the ongoing audit that B-Three Solutions was charging the PBP separately for matters that ordinarily would have been included in a subscription for annual software maintenance.

41. In total, the investigation revealed that the PBP had paid B-Three Solutions over $1,000,000 for technology upgrades and updates that were either not completed, could have been performed by other companies at much lower cost (if not for free) or were inferior in comparison to industry standards.

42. Officer Chatterji reported the findings of the audit to Former Chief McLay and Chief of Staff Holmes, who then initiated an investigation of B-Three Solutions through the OMI and the Federal Bureau of Investigations (the "FBI").

43. Through these investigations, it was revealed that federal grant money was being used to pay B-Three Solutions, as opposed to money from Pittsburgh's general fund.

44. Because federal grant money was used to pay B-Three Solutions, the PBP was required to complete annual reports for the federal government disclosing how the grant money was spent and for what purpose.

45. These investigations thus revealed that the PBP was reporting in its annual reports that it used federal grant money for projects that were completed by B-Three Solutions when those projects had in fact not been completed.

46. Around the time that Officer Chatterji, the OMI and the FBI were all investigating Commander Barone and B-Three Solutions, Former Chief McLay and Chief of Staff Holmes

also hired an outside contractor, Nicole DeMotto ("Contractor DeMotto"), to develop a crime analysis unit using data driven policing practices for the PBP.

47. While trying to develop the crime analysis unit, Contractor DeMotto reported to Former Chief McLay that the biggest difficulty in developing that unit lied in the underperforming information technology systems at the PBP.

48. Because of her prior experience with the information technology systems that the PBP was supposed to be implementing, Former Chief McLay thus similarly tasked Contractor DeMotto with investigating B-Three Solutions.

49. During her investigation, Contractor DeMotto authored numerous reports concerning money that the PBP had paid B-Three Solutions for contracts for upgrades to the information technology systems that were never upgraded.

50. Contractor DeMotto also authored reports which were critical of Commander Barone in causing the PBP to pay B-Three Solutions for projects that it had not completed.

51. At all relevant times, Commander Barone was aware that Officer Chatterji, the OMI, the FBI and Contractor DeMotto were investigating her and B-Three Solutions.

52. Following the resignation of Former Chief McClay, Assistant Chief Barone terminated the OMI investigation; ordered the PBP to cease its investigation with the FBI; and, required Contractor DeMotto to execute a non-disclosure agreement that prohibited her from discussing or disclosing the findings of her investigation of B-Three Solutions.

**Threats**

53. Throughout the time that Officer Chatterji was conducting his investigation, he was subjected to various direct and indirect threats by Commander Barone.

54. During one meeting, Commander Barone told Officer Chatterji that "if he kept digging into B-Three Solutions, then it would lead to his ruin."

55. Commander Barone also told Officer Chatterji that "chiefs come and go," referring to Former Chief McLay, and that he would ultimately be the one that suffered for investigating B-Three Solutions.

56. On numerous occasions, officers under Commander Barone's direct control and supervision and who were aligned with Commander Barone, including Officer Dawn Bowen ("Officer Bowen") and Sergeant Anthony Cortopassi ("Sergeant Cortopassi"), intimidated and pressured Officer Chatterji to terminate the investigation into B-Three Solutions on her behalf.

57. Commander Barone had knowledge of and acquiesced in the way Officer Bowen and Sergeant Cortopassi went about intimidating and pressuring Officer Chatterji to terminate his investigation.

58. Officer Bowen and Sergeant Cortopassi both hold supervisory positions over Officer Chatterji in that Officer Chatterji is required to follow any orders given to him within the PBP by Officer Bowen or Sergeant Cortopassi.

59. On one occasion, Sergeant Cortopassi told Officer Chatterji that the "new administration" (i.e., Former Chief McLay's administration) was negatively affecting his "friends" at B-Three Solutions and that he needed to stop his investigation or else he would suffer.

60. On another occasion, Officer Chatterji overheard Officer Bowen, Sergeant Cortopassi and Alexis Barone—Commander Barone's daughter, who was employed in Pittsburgh's Department of Innovation and Performance—stating that he was "disrupting things" with B-Three Solutions.

61. Officer Chatterji, who is of Indian descent, also overheard Officer Bowen, Sergeant Cortopassi and Alexis Barone calling him a "sandn*****" and "Haji."

62. Officer Bowen, Sergeant Cortopassi and Alexis Barone discussed together how no "brown person" like Officer Chatterji should be promoted within the PBP.

63. The PBP was notified of the derogatory and racist remarks concerning Officer Chatterji but failed to take any substantive action to address or stop them from reoccurring.

64. The PBP is aware that Sergeant Cortopassi continues to make derogatory and racist remarks directed at Officer Chatterji because of his national origin through channels such as computer and internet chat rooms in which supervisors and decision-makers of the PBP frequent.

65. Such derogatory remarks in those chat rooms include calling Officer Chatterji "Muhammed" and "Chatter Teeth," and telling him that only "Americans" can wear their badge on their uniform if they have military service.

**Retaliation**

66. Former Chief McLay officially announced his resignation on November 4, 2016; his last day with the PBP was November 8, 2016.

67. In February 2017, Commander Barone was promoted to Assistant Chief of the PBP and Deputy Director of the Department of Public Safety.

68. As the Assistant Chief and Deputy Director, Assistant Chief Barone is employed in positions subordinate and supervisory to the Chief of the PBP.

69. Prior to Former Chief McClay's resignation, Officer Chatterji received the highest attainable levels in his performance reviews with the PBP.

11

70. After Former Chief McClay resigned from the PBP, Officer Chatterji received lesser performance reviews than he received in the past as a direct result of Assistant Chief Barone's negative influence on Officer Chatterji's career with the PBP.

71. Assistant Chief Barone terminated Officer Chatterji's keycard access to the PBP's headquarters following Former Chief McLay's resignation.

72. Officer Chatterji later met with Assistant Chief Barone about this demotion, who told him that "he is done with the police department," "he has no future with the police department," "he will never be promoted," and "he should find another job."

73. Officer Chatterji returned to his regular shifts as a patrol officer in Zone 2.

74. Upon returning to Zone 2, Officer Chatterji was advised by his lieutenant that he could never speak about anything related to Assistant Chief Barone or B-Three Solutions again.

75. Officer Chatterji's lieutenant told him that Assistant Chief Barone instructed him to give Officer Chatterji that order.

76. Despite continued direct and indirect harassment from Assistant Chief Barone, Officer Chatterji attempted to move forward in his career with the PBP by preparing for and taking the sergeant's examination, where he scored number one in all categories, as well as number one overall for all qualified applicants within the PBP for the sergeant's promotion.

77. Officer Chatterji's number one overall ranking entitled him to the sergeant's promotion over any other candidate in the PBP.

78. Despite scoring number one overall, Officer Chatterji was told by Deputy Assistant Chief of the PBP, Thomas Stangrecki, on November 20, 2017, that Assistant Chief Barone ordered that he not be promoted to sergeant because of a baseless investigation that she

had initiated with the OMI into Officer Chatterji's investigation under Former Chief McLay of B-Three Solutions and her role or relationship with B-Three Solutions.

79. No patrol officer within the PBP has scored number one overall and not been promoted to sergeant.

80. No patrol officer within the PBP who has been under investigation, even for meritorious claims, has been denied the promotion to sergeant if they otherwise qualified for that promotion.

81. Officer Chatterji later learned from Chief of Staff Holmes that, because of Assistant Chief Barone's influence and intimidation tactics, he did not even receive a recommendation for sergeant.

82. Officer Chatterji was never provided a hearing over his non-promotion.

83. In connection with Officer Chatterji not receiving the sergeant's promotion, Assistant Chief Barone stated to colleagues and other staff members of Pittsburgh that he is dishonest, untrustworthy and had violated numerous rules and policies that resulted in him not being promoted including conducting the investigation on his own volition and engaging in theft of documents during the investigation.

84. Assistant Chief Barone also stated to colleagues and other staff members of Pittsburgh that Officer Chatterji only scored number one overall because he was "Indian" and thus was given extra credit that "Americans" were not given.

85. Assistant Chief Barone further stated to colleagues and other staff members of Pittsburgh that Officer Chatterji was not promoted because of his incompetence because of his lack of understanding of "American ways."

86. On January 29, 2018, at the direction of Assistant Chief Barone, Public Information Officer Alicia George ("PIO George") confronted Officer Chatterji about his investigation into B-Three Solutions.

87. During that confrontation, PIO George told Officer Chatterji that his career would be ruined unless he cooperated with Assistant Chief Barone, which included signing a non-disclosure agreement relating to any information he learned about her and B-Three Solutions during his investigation.

88. As of February 2018, at least six patrol officers that ranked below Officer Chatterji received promotions to the rank of sergeant

89. None of the six patrol officers receiving promotions to the rank of sergeant are of Indian descent.

90. Officer Chatterji since learned that Assistant Chief Barone ordered Assistant Chief of Operations Anna Kudrov to initiate the baseless OMI investigation into his investigation into B-Three Solutions to both discredit him and bar his promotion to sergeant.

91. Assistant Chief Barone continues to take overt steps to ruin Officer Chatterji's career with the PBP because of an investigation that he was ordered to conduct, including publicizing false and defamatory statements about him, directly and indirectly threatening him, and attempting to discredit him within not only the PBP but Pittsburgh.

## COUNT I – DUE PROCESS VIOLATION UNDER THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983

**(Plaintiff vs. All Defendants)**

92. All paragraphs herein are incorporated by reference.

93. Pittsburgh uses a civil service merit-based system requiring that qualified individuals be promoted to the rank of sergeant in chronological order until all vacant positions are filled.

94. The civil service merit-based system utilized by Pittsburgh for promotion to the rank of sergeant is mandatory.

95. Pittsburgh has never deviated from this merit-based system for promotions to sergeant, even where a qualified officer is under investigation by the OMI.

96. Officer Chatterji ranked number one overall among all qualified applicants for promotion to the rank of sergeant.

97. Because Officer Chatterji ranked number one overall in being promoted to the rank of sergeant, he had a legitimate property interest in his right to be promoted.

98. Officer Chatterji was not afforded a timely hearing within which to respond to not being promoted despite being entitled to being promoted to sergeant.

99. Because Officer Chatterji was not promoted to sergeant and was not afforded a hearing over his non-promotion, he was deprived of a property interest to which he was entitled under the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Officer Chatterji respectfully requests that this Court enter a judgment against Pittsburgh and Assistant Chief Barone and grant the following relief: (i) compensatory damages, including lost wages, lost future earnings, and emotional pain and suffering; (ii) punitive damages; (iii) attorney's fees and costs; and (iv) all other relief as this Court deems just and proper.

## COUNT II – DUE PROCESS VIOLATION UNDER THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C § 1983

**(Plaintiff vs. All Defendants)**

100. All paragraphs herein are incorporated by reference.

101. In connection with Officer Chatterji not being promoted to sergeant, Assistant Chief Barone told various individuals inside and outside the PBP that Officer Chatterji was dishonest, untrustworthy and under investigation by the PBP for rule and policy violations that would end his career including conducting the investigation on his own volition and engaging in theft of documents during the investigation.

102. Assistant Chief Barone also told individuals inside and outside the PBP that Officer Chatterji only scored number one because he was given additional points for being "non-American" or for being "Indian," which was patently false.

103. Assistant Chief Barone further stated to colleagues and other staff members of Pittsburgh that Officer Chatterji was not promoted because of his incompetence because of his lack of understanding of "American ways," which was also patently false.

104. Those false and defamatory statements were intended to harm his reputation and ability to earn a living in his chosen profession as a police officer, including his chosen career as a police officer with the PBP.

105. Assistant Chief Barone further told Officer Chatterji that "he is done with the police department," "he has no future with the police department," "he will never be promoted," and "he should find another job."

106. These statements to Officer Chatterji by Assistant Chief Barone resulted in his constructive discharge from the PBP.

107. Officer Chatterji was not afforded a timely hearing within which to respond to the false and defamatory statements made against him by Assistant Chief Barone.

108. Because Officer Chatterji was not promoted to sergeant and was constructively discharged, and because he was defamed in connection with both not being promoted and being constructively discharged, he was deprived of his interests in liberty and property as guaranteed by the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Officer Chatterji respectfully requests that this Court enter a judgment against Pittsburgh and Assistant Chief Barone and grant the following relief: (i) compensatory damages, including lost wages, lost future earnings, and emotional pain and suffering; (ii) punitive damages; (iii) attorney's fees and costs; and (iv) all other relief as this Court deems just and proper.

### COUNT III – EQUAL PROTECTION VIOLATION UNDER THE FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983

**(Plaintiffs vs. All Defendants)**

109. All paragraphs herein are incorporated by reference.

110. Officer Chatterji is the only patrol officer in the PBP that is of Indian descent.

111. Pittsburgh and Assistant Chief Barone, together and/or individually, intentionally discriminated against Officer Chatterji by not promoting him to sergeant because of his national origin, in violation of the Equal Protection Clause of the United States Constitution.

WHEREFORE, Officer Chatterji respectfully requests that this Court enter a judgment against Pittsburgh and Assistant Chief Barone and grant the following relief: (i) compensatory damages, including lost wages, lost future earnings, and emotional pain and suffering; (ii) punitive damages; (iii) attorney's fees and costs; and (iv) all other relief as this Court deems just and proper.

## COUNT IV – VIOLATION OF THE WHISTLEBLOWER LAW

### (Plaintiff vs. All Defendants)

112. All paragraphs herein are incorporated by reference.

113. Pittsburgh is an employer as defined by the Whistleblower Law because it is a public body.

114. Assistant Chief Barone is an employer under the Whistleblower Law because she receives money from Pittsburgh to perform work or provide services for Pittsburgh.

115. Officer Chatterji was authorized to investigate B-Three Solutions by Former Chief McLay and Chief of Staff Holmes as part of his employment.

116. Pursuant to his investigation, Officer Chatterji reported evidence of substantial abuse, misuse, destruction and/or loss of funds or resources belonging to Pittsburgh, verbally and in writing, relating to Assistant Chief Barone, the PBP and B-Three Solutions to Former Chief McLay and Chief of Staff Holmes.

117. Also pursuant to his investigation, Officer Chatterji reported evidence of potential federal grant fraud, verbally and in writing, relating to Assistant Chief Barone, the PBP and B-Three Solutions to Former Chief McLay and Chief of Staff Holmes.

118. Because Officer Chatterji reported evidence of waste and wrongdoing to Former Chief McLay and Chief of Staff Holmes relating to Assistant Chief Barone, the PBP and B-Three Solutions, Pittsburgh and Assistant Chief Barone retaliated against him by not promoting him to sergeant.

WHEREFORE, Officer Chatterji respectfully requests that this Court enter a judgment against Pittsburgh and Assistant Chief Barone and grant the following relief: (i) compensation for the full value of wages and benefits that Officer Chatterji would have received had it not been for Defendants' retaliatory conduct, with interest until the date of any verdict as to be determined at trial; (ii) actual damages in an amount to be determined at trial; (iii) attorney's fees, witness fees and costs of litigation; and (iv) all other relief this Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF TIMOTHY P. O'BRIEN

/s/ Alec B. Wright
Timothy P. O'Brien
Pa. ID No. 22104
Alec B. Wright
Pa. ID No. 316657
239 Fourth Avenue
Investment Building, Suite 2103
Pittsburgh, Pennsylvania 15222
(412) 260-1662

*Counsel for Plaintiff,*
*Souroth Chatterji*