**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| SOUROTH CHATTERJI, | | ) | |
| | Plaintiff, | ) | |
| v. | | ) | Civil Action No. 2:18-cv-00199-CB |
| | | ) | Judge Cathy Bissoon |
| CITY OF PITTSBURGH et al., | | ) | |
| | Defendants. | ) | |

**DEFENDANT CITY OF PITTSBURGH'S BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**I.    Introduction**

The Amended Complaint's sensational allegations read almost like the plot of a television

show. However, when the legal conclusions, innuendo, and inflammatory rhetoric are stripped

away, Plaintiff's attempt to constitutionalize what is essentially an employment grievance should

be rejected. Plaintiff's claim of suffering an Equal Protection violation (Count I) should be

dismissed. His claim for a violation of Pennsylvania's Whistleblower Law (Count II) is likewise

without merit. The City respectfully requests that the Court dismiss this lawsuit.

**II.    Factual and procedural background**

According to the Amended Complaint's factual allegations, in 2015, as a relatively new

third-year police officer, Plaintiff was ordered by the Chief of Police to "become part of a work

group within the PBP to audit the information technology systems it was utilizing," ECF No. 15

¶ 1, "including those related to B-Three Solutions," *id.* ¶ 104. As part of his alleged duties in this

work group, Plaintiff learned that the PBP allegedly "paid B-Three Solutions over $1,000,000 for

technology upgrades and updates that were either not completed, could have been performed by

other companies at much lower cost (if not for free), or were inferior in comparison to industry

standards." *Id*. ¶ 42. PBP officials then allegedly "initiated an investigation through OMI and the Federal Bureau of Investigations (the 'FBI')." The Amended Complaint does not allege that either OMI or the FBI found any wrongdoing or violations of City Code, state or federal criminal law, or any other objective standard of wrongdoing. (In fact, according to press reports, the FBI closed its investigation with no criminal charges.)

Plaintiff also alleges that he overheard three individuals in the Pittsburgh Police — none of whom are Defendant Barone or the Director of Public Safety Wendell Hissrich — make racist remarks about him. *Id*. ¶¶ 71-73. Plaintiff alleges that the PBP "was notified of the derogatory and racist remarks concerning Officer Chatterji but failed to take any substantive action to address or stop them from reoccurring." *Id.* ¶ 74. Plaintiff fails to allege whether OMI, however, may have undertaken an investigation into the allegations and made factual determinations about the alleged remarks.

The City recognizes that well-pled factual allegations of course must be taken as true at this stage. However, it should be noted that the Amended Complaint contains numerous allegations that are false or just flat-out bizarre, such as when it alleges that "Assistant Chief Barone terminated the OMI investigation [and] influenced the PBP to cease its investigation with the FBI." *Id.* ¶ 58. The Amended Complaint contains no plausible factual allegation that Defendant Barone, who is not alleged to work in OMI, would have any authority to terminate an OMI investigation, nor is it clear what it means for the Pittsburgh police to have an "investigation with the FBI," let alone having the power to "cease" that investigation. *Id*. The

2

FBI does not act at the direction of the Pittsburgh police.[1]

The Amended Complaint also alleges that "Officer Chatterji was never provided a hearing over his non-promotion," (*Id.* at ¶ 101), when in fact the evidence will show that: the promotions of various candidates to Sergeant occurred on March 16, 2018; and on March 19, 2018, the FOP President signed a "Report of Officer Grievance" on Plaintiff's behalf beginning the grievance process provided by the FOP-City working agreement; a "step 1" meeting between a PBP official and three FOP officials, including the FOP President, was held on March 27, 2018; and the grievance process was continuing when on June 4, 2018, Plaintiff resigned from his position in the Pittsburgh Bureau of Police. (Indeed, the FOP has indicated that it intends to continue the grievance process on Plaintiff's behalf for pursuit of back wages or other available remedies.)

Plaintiff does not allege a pattern of repeated incidents of alleged violations of Equal Protection violations in connection with alleged whistleblowing by employees of City of Pittsburgh's Bureau of Police. Plaintiff does not plausibly allege that the Director of Public Safety, who as explained below makes promotion decisions, harbored any anti-Indian or anti-immigrant animus; to the contrary, the Amended Complaint's attempts to tie Director Hissrich to the alleged racially offensive remarks are nothing more than legal conclusions and innuendo. *See, e.g.*, ECF No. 15 ¶ 113 ("Assistant Chief Barone and Director Hissrich selected

---

[1] Plaintiff's evident confusion about how OMI works was also demonstrated by his Motion for a Protective Order (ECF No. 12), which he filed without any sworn factual support whatsoever. Defendants opposed that Motion because, among other reasons, OMI's independence and confidentiality would be unduly threatened, and simply filing a federal lawsuit should not immunize an employee from an internal investigation into misconduct. The Court denied Plaintiff's Motion. *See* ECF No. 18.

and/or reaffirmed a racially-charged position about Officer Chatterji because of his Indian-descent in deciding not to promote him."). The Amended Complaint at the same time alleges that the decision not to promote Plaintiff was "because of the audit" (*id*. ¶ 103), and after "Director Hissrich . . . reviewed all the internal memorandums and reports that were prepared by Officer Chatterji and other members of the work group concerning the audit," *id*. ¶ 105. (The Amended Complaint's legal conclusions about the promotion process are misguided; as explained below, it is well-established that the Director of Public Safety has wide-ranging discretion in such decisions.)

On February 14, 2018, Plaintiff filed this civil action against the City of Pittsburgh and Linda Barone. The Complaint alleged a violation of Plaintiff's Due Process rights, via 42 U.S.C. § 1983, as the result of not being promoted (Count I); a violation of Plaintiff's Equal Protection rights (Count II); and a claim under the Pennsylvania Whistleblower Law (Count III), 43 Pa. Stat. Ann. §§ 1424-1425.[2] Following discussion between counsel pursuant to the Court's meet-and-confer Order (ECF No. 2), on May 14, 2018, Plaintiff filed an Amended Complaint abandoning his Due Process claim and adding some additional allegations. As noted, Plaintiff resigned his employment with the PBP on or about June 4, 2018.[3]

---

[2] 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The Fourteenth Amendment provides in relevant part: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[3] Though not at issue in this Motion, Plaintiff's resignation occurred shortly before a press report emerged of allegedly "bizarre" and "completely inappropriate" messages he sent to a

### III.    Standard of Review

The Third Circuit has set forth a three-step test for "a court reviewing the sufficiency of a complaint." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). A court should proceed as follows:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." [*Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).] Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679." 809 F.3d at 876-77. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted)

809 F.3d at 787; *see also White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013) (A plaintiff "may not attempt to use discovery as a fishing expedition . . . to seek out the facts necessary to establish a legally adequate complaint.").

### IV.    Argument

#### A. Plaintiff's Equal Protection claim against the City (Count I) must be dismissed for lack of a plausibly alleged custom or policy.

Plaintiff's claim against the City for an Equal Protection violation fails because there is no plausible allegation of a municipal policy or custom necessary to pursue a claim against the

---

woman he had arrested in March 2018. See B. Bauder, *Attorney says ex-Pittsburgh police officer sent client "bizarre" messages*, Pittsburgh Tribune-Review, June 6, 2018, available at triblive.com/local/allegheny/13727352-74/attorney-says-ex-pittsburgh-police-officer-sent-client-bizzare-messages. In addition, Plaintiff is facing a state-court action for defamation brought by B-Three Solutions, Inc., at GD No. 18-004650 in the Allegheny County Court of Common Pleas, which so far is only at the writ-of-summons stage.

City based on *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658 (1978). "As the Supreme Court has explained, '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker.'" *Brown v. City of Pittsburgh*, 586 F.3d 263, 292-93 (3d Cir. 2009) (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality op.)); *see also Detar v. Metting*, No. 14-1600, 2015 WL 3457499, at *2 (W.D. Pa. May 29, 2015) (dismissing lawsuit against city because "the Complaint fails to set forth any plausible basis to conclude that there was a municipal custom, policy, or practice, generally applicable, that resulted in a Constitutional deprivation under color of state law of a right or rights of the Plaintiff."). Here, Plaintiff's Amended Complaint contains only a single allegation of allegedly unlawful conduct by the City, which is legally insufficient to support a *Monell* claim.

To set the stage, it is important to note what claims Plaintiff is *not* bringing: Plaintiff is not bringing a claim for violation of Title VII; indeed, there is no suggestion that he has begun the process of filing an EEOC charge. And in fact, an employee is barred from seeking damages under Section 1983 for violations of either Title VII or certain other anti-discrimination statutory schemes. *See Williams v. PHRC*, 870 F.3d 294 (3d Cir. 2017).

Further, Plaintiff, as a public employee, cannot bring a so-called "class of one" equal protection claim. In *Engquist v. Oregon Department of Agriculture*, the Supreme Court rejected such a theory: "We hold that such a 'class-of-one' theory of equal protection has no place in the public employment context." 553 U.S. 591, 594 (2008). As the Court observed, "we have often recognized that government has significantly greater leeway in its dealings with citizen

6

employees than it does when it brings its sovereign power to bear on citizens at large." *Id.* at 599.

The Supreme Court noted that "the class-of-one theory of equal protection . . . is simply a poor

fit in the public employment context," given among other reasons, "the broad discretion that

typically characterizes the employer-employee relationship." *Id.* at 605. Thus, "ratifying a

class-of-one theory of equal protection in the context of public employment would impermissibly

constitutionalize the employee grievance." *Id.* at 609 (internal quotation marks omitted); *see also*

*Lear v. Zanic*, 524 F. App'x 797, 801 (3d Cir. 2013) (affirming dismissal of equal protection

claim: "Lear argues that his claim is unrelated to his status as a public employee. Yet this

position ignores the complaint's clear allegations that "the purpose of [the PSP defendants']

unlawful effort was to employ . . . regulations of the PSP in order to retaliate" against Lear. . . .

Because the District Court correctly applied Supreme Court precedent, we will affirm its

dismissal of the equal protection claim.").

Thus, Plaintiff's asserted claim is limited to a claim for an independent constitutional

violation of the Equal Protection Clause. *See Engquist*, 553 U.S. at 605 (noting "our cases make

clear that the Equal Protection Clause is implicated when the government makes class-based

decisions in the employment context, treating distinct groups of individuals categorically

differently"). Regarding such a claim, the Third Circuit Model Jury Instructions state:

> Section 1983 claims against municipal defendants.  A Section 1983 employment
> discrimination claim against a municipal defendant requires a showing that the
> violation of plaintiff's constitutional rights resulted from a municipal policy or
> custom.  *See, e.g.*, [*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.
> 1990)]; *see supra* Comments 4.6.3 - 4.6.8.  This test differs from Title VII's test
> for *respondeat superior* liability.  *See supra* Comments 5.1.3 - 5.1.5.

Third Circuit Model Civ. Jury Inst. Comment 7.0. Here, the Amended Complaint does not allege

a plausible claim that the City is making "class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Engquist*, 553 U.S. at 605. Nor does the Amended Complaint plausibly allege that a municipal policy or custom violated Plaintiff's right to equal protection. Count I against the City should therefore be dismissed.

First, Plaintiff does not allege that a municipal policy, as set forth in a City ordinance or the like, has violated his rights. Second, nor do his allegations amount to a plausibly pled allegation of a widespread custom of discriminating against persons of Indian descent. "As the Supreme Court has explained, '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker.' *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion)." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292-93 (3d Cir. 2009); *see also Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004) (proving deliberate indifference "typically requires proof of a pattern of underlying constitutional violations"); *Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) (Although there are no "bright line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."). Plaintiff does not allege any factual allegations or any pattern of factual allegations which warrant imposition of liability upon the City based on this custom theory in this case.

Third and finally, in limited circumstances a plaintiff may try to establish a constitutional violation as committed by a final policymaker. *See Monell*, 436 U.S. at 694 (official policy or custom can be "made by . . . lawmakers or by those whose edicts or acts may fairly be said to

represent official policy"). This question is decided by reference to state or local law. *See Jett v. Dallas Independent. School Dist.*, 491 U.S. 701, 737 (1989); *Pembauer*, 475 U.S. at 483; *see also McGreevy*, 413 F.3d at 368 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). A court must determine whether an "'official had final, unreviewable discretion to make a decision or take action,'" in order to find liability. *Id.* at 369 (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). Here the Director of Public Safety, not Linda Barone, has the authority to make decisions as to promotions. *See* 53 Pa. Stat. Ann. § 23535 (West) ("Promotions shall be based upon merit to be ascertained by tests to be provided by the civil service commission and upon the superior qualifications of the person to be promoted as shown by his previous service and experience."); Pittsburgh Home Rule Charter, art. 7, § 701 (providing in relevant part: "Appointments, promotions and removals of subordinate officers and employees within major administrative units shall be made by the major administrative unit head on the basis of the system adopted."); *see also Trosky v. Civil Serv. Comm'n, City of Pittsburgh*, 539 Pa. 356, 368 (1995); *City of Erie v. Haas Mem l Lodge No. 7*, 434 A.2d 881, 883 n.4 (Pa. Commw. Ct. 1981) ("The promotion of policemen is a matter of management prerogative subject to limitation only by statutory, home rule charter, civil service or merit system constraints.")

The Amended Complaint fails to state a plausible claim that the City's Director of Public Safety violated Plaintiff's constitutional rights by allegedly failing to promote him. The Amended Complaint's only allegations attempting to suggest a racial animus are boilerplate legal conclusions, which this Court must disregard. The Amended Complaint's allegations attempting to connect Plaintiff's lack of a promotion to his work on the Bureau's information technology also fails, because that does not constitute an Equal Protection violation. No binding precedent

9

exists that would allow a *Monell* claim based on a single instance of lack of promotion under these circumstances, and the Supreme Court case law does not endorse stretching the *Monell* theory to this innovative degree. To allow such a claim to proceed based on these allegations cannot succeed, and moreover would run afoul of the Supreme Court's rejection of a class-of-one theory in *Engquist*, and the Third Circuit's rejection of an attempt to use Section 1983 to backdoor claims that sound in an anti-discrimination statute like Title VII.

Thus the Court should dismiss Count I against the City.

**B. Plaintiff's state-law whistleblower claim (Count II) should be dismissed.**

Plaintiff's attempt to state a claim under Pennsylvania's Whistleblower Law should be rejected, and Count II should be dismissed against the City. The Pennsylvania Whistleblower Law provides in relevant part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

43 Pa. Stat. Ann. § 1423. First, this Court lacks jurisdiction over any alleged violations of the Whistleblower Law that pre-date August 18, 2017. Second, the Amended Complaint does not cite a specific law, regulation, ordinance, or code of conduct that Officer Chatterji identified as having been violated. (And in fact, while the Amended Complaint notes that OMI and the FBI opened investigations, the Amended Complaint notably fails to allege that either entity found any wrongdoing, whether criminal or other violations of policy or law.) Third, the time between Plaintiff's alleged report of wrongdoing and being up for promotion is too long to allow for an

inference of causation. In any event, once the Equal Protection claim is dismissed, the court would not have jurisdiction over the state-law claim and should decline to consider this claim.

First, regarding the time bar, the law provides a limitations period: "A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation." *Id*. § 1423. Plaintiff filed his initial complaint on February 14, 2018; 180 days before that filing date was Friday, August 18, 2017. This Court lacks jurisdiction over the whistleblower claim to the extent it is based on any events or occurrences before that date, including but limited to any such alleged threats in Paragraphs 63-77.

This statute of limitations period is jurisdictional, since it operates by "limiting the scope of a governmental waiver of sovereign immunity." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133-34 (2008). While some limitations periods are an affirmative defense and may be waivable, the "second, more absolute kind of limitations period" is not waivable and, indeed, a court must raise a jurisdictional statute sua sponte. *Id.* at 134. When a statute of limitations is jurisdictional, "'non-compliance bars an action regardless of the equities in a given case.'" *Oshiver v. Levin*, 38 F.3d 1380, 1387 (3d Cir. 1994) (quoting *Hart v. J.T. Baker Chemical Co.*, 598 F.2d 829, 832 (3d Cir. 1979)).

In this case, the Whistleblower Law operates as a waiver of governmental immunity that the City would otherwise have. *See Rankin v. City of Philadelphia*, 963 F. Supp. 463, 469 (E.D. Pa. 1997) ("Although the City defendants did not raise the issue, I also conclude that the provision for back wages demonstrates legislative intent to waive governmental immunity otherwise available under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §§

8541–8542 (West 1982 & Supp.1996).”); *Taha v. Bucks Cty.*, No. 12-6867, 2014 WL 695205, at *3-4 (E.D. Pa. Feb. 21, 2014) (noting that “the Whistleblower Law’s general scheme . . . demonstrates a legislative waiver of immunity under the Political Subdivision Tort Claims Act.”); *see also Lockwood v. City of Pittsburgh*, 751 A.2d 1136, 1139 (Pa. 2000) (“Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed.”). Therefore, since the law’s limitations period limits the scope of that waiver, the 180-day filing requirement is jurisdictional. *See Campion v. Northeast Utils.*, 598 F. Supp. 2d 638, 645 (M.D. Pa. 2009) (“[D]espite the use of the permissive ‘may,’ the Whistleblower Law’s 180-day time limit is mandatory, and courts have no discretion to extend it.” (internal quotation marks omitted); *see also Brown v. Montgomery County*, 470 F. App’x 87, 89 (3d Cir. 2012). In this case, to the extent that Plaintiff’s allegations about alleged threats to his future career occurred prior to August 18, 2017, they cannot support a claim under the Whistleblower Act.

Second, the Whistleblower Law defines wrongdoing as “[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer.” 43 Pa. Stat. Ann. § 1422. The test for determining the existence of wrongdoing is an objective one, and courts should not consider a plaintiff’s subjective belief that the reported conduct was wrongdoing. *See Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 504-06 (M.D. Pa. 2015) (holding that allegations of altering a police report did not constitute wrongdoing because plaintiff could not point to any actual violation of law); *Hays*

12

*v. Beverly Enterprises, Inc.*, 766 F. Supp. 350, 357 (W.D. Pa. 1991), *aff'd*, 952 F.2d 1392 (3d Cir. 1991).

Plaintiff has alleged that he was retaliated against for making good faith reports of wrongdoing and waste within the meaning of the Whistleblower Law when he reported on certain information technology projects. However, nowhere has Plaintiff identified how such allegations actually violated a specific Federal or State statute or regulation, political subdivision ordinance or regulation or code of conduct so as to qualify as "wrongdoing" under the statute. Pennsylvania's Whistleblower Law requires that the alleged violation is not merely technical or minimal in nature, and that the violation is objectively considered wrongdoing. 43 Pa. Stat. Ann. § 1422.[4]

Third, and related to the limitations period, too long a period elapsed between the alleged threats and the alleged harm suffered by Chatterji in a lack of promotion. *See Horvath v. Urban Redevelopment Auth. of Pittsburgh*, No. CV 15-668, 2017 WL 1179008, at *2 (W.D. Pa. Mar. 29, 2017) (in rejecting temporal gap of three years on a Title VII retaliation claim, citing cases

---

[4] Note that Plaintiff lacks First Amendment protection for his reports made up the chain of command. In *Garcetti v. Ceballos*, the Supreme Court held: "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006). In similar circumstances, this Court has determined that complaints made up the chain of command, pursuant to a government employee's job duties, are not speech protected under the First Amendment. *See Kahan v. Slippery Rock Univ. of Pennsylvania*, 50 F. Supp. 3d 667, 708 (W.D. Pa. 2014) (awarding summary judgment to defendants); *Beatty v. Borough*, No. 2:14CV67, 2016 WL 1072910, at *6 (W.D. Pa. Mar. 18, 2016) (awarding summary judgment to defendants: "The Court, therefore, holds that Plaintiff's speech was not made as a citizen, but pursuant to, and in furtherance of, his duties as a police officer."); *see also Knight v. Drye*, 375 F. App'x 280 (3d Cir. 2010) (affirming summary judgment where a police officer's complaint sent up the chain of command regarding improper conduct by another officer was not made as a citizen but rather pursuant official duties).

where "causation [was] lacking," including "*C.M. v. Bd. of Educ.*, 128 Fed.Appx. 876, 883 (3d Cir. 2005) (finding that a three month gap between protected activity and adverse employment action was too broad to support causation); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760-61 (3d Cir. 2004) (two month gap did not support inference of causation); *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 50 (W.D. Pa. 2010) (seven month gap suggested lack of causation)"); *see also Mosley v. City of Pittsburgh Pub. Sch. Dist.*, 702 F. Supp. 2d 561, 588 (W.D. Pa. 2010) ("Plaintiff's termination, coming five months after his March 19th Memorandum, is simply too remote to infer a causal connection.").

Finally, at a minimum, provided that Count I is dismissed as the City asks, this Court should decline to exercise supplemental jurisdiction over Count II. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."), *superseded by statute* in 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Horvath*, 2017 WL 1179008, at *5 (declining to extend supplemental jurisdiction over remaining Pennsylvania Whistleblower Law claim).

## V.    Conclusion

For the foregoing reasons and for the reasons set forth in their Motion, the City respectfully requests that the Court dismiss all claims against it in the Amended Complaint.

Respectfully submitted,

YVONNE S. HILTON
Acting City Solicitor

14

s/ Matthew S. McHale, Esq.
Matthew S. McHale, Esq. (Pa. ID No. 91880)
Associate City Solicitor
414 Grant Street
Pittsburgh, PA 15219
matthew.mchale@pittsburghpa.gov
*Counsel for Defendant City of Pittsburgh*