**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SOUROTH CHATTERJI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-199 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| CITY OF PITTSBURGH *and* | ) | |
| LINDA BARONE, *individually*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

## I. <u>MEMORANDUM</u>

Pending before the Court are Motions to Dismiss Plaintiff's Amended Complaint (hereinafter "Amended Complaint" or "Am. Compl.," Doc. 15) filed by Defendant City of Pittsburgh (hereinafter "City's Motion to Dismiss," Doc. 26) and Defendant Linda Barone (hereinafter "Barone's Motion to Dismiss," Doc. 28). Plaintiff Souroth Chatterji ("Officer Chatterji" or "Plaintiff") filed Responses in Opposition to both Defendants' Motions to Dismiss, (Docs. 35, 36), and each Defendant filed a Reply, (Docs. 39, 40.) After consideration of all briefing by the parties, the City's Motion to Dismiss and Barone's Motion to Dismiss will be **DENIED**.

### A. <u>BACKGROUND</u>

Plaintiff began working as a patrol officer with the Pittsburgh Bureau of Police ("PBP") in 2012. (Am. Compl. at ¶ 1.) Of the over 850 patrol officers in the PBP, Plaintiff is the only officer of Indian descent. (<u>Id.</u> at ¶¶ 109–10.) Over the last decade, Plaintiff is also the only immigrant to serve in the PBP. (<u>Id.</u> at ¶ 111.)

1

### 1.    Audit of B-Three Solutions and Defendant Barone

In 2015, Plaintiff was tasked with auditing the PBP's information technology systems. (Id. at ¶¶ 14, 19–20.)  While performing this work, Plaintiff discovered that the PBP's systems created by B-Three Solutions were "outdated and likely overpriced" and Plaintiff reported those findings to then Chief of the PBP, Cameron McClay ("McClay").  (Id. at ¶¶ 21–26.)  In response, McClay ordered Plaintiff "to conduct a full internal audit of the information technology systems the PBP was implementing through B-Three Solutions."  (Id. at ¶ 27.)

During the ongoing, full audit performed by Plaintiff, he uncovered that "the PBP paid B-Three Solutions over $1,000,000 for technology upgrades and updates that were either not completed, could have been performed by other companies at a much lower cost (if not for free), or were inferior in comparison to industry standards."  (Id. at ¶ 42.)  In light of Plaintiff's conclusions, McClay turned Plaintiff's findings over to law enforcement.  (Id. at ¶ 43.)  A contractor brought in to audit the PBP information technology systems also found PBP paid B-Three Solutions for upgrades that never occurred.  (Id. at ¶¶ 47–50.)  Plaintiff avers that Defendant Barone was the "sole source contact" with B-Three Solutions and that B-Three Solutions was able to "monopolize" work on PBP's information technology systems since 2006 because of its relationship with Defendant Barone.  (Id. at ¶ 51.)

At the conclusion of the audit, Plaintiff states that "numerous decisionmakers for Pittsburgh" endorsed its findings, including to the Director of the Department of Public Safety, Wendell Hissrich ("Director Hissrich"), and that Pittsburgh City Council passed a resolution to change the city's process for receiving and analyzing requests for proposal.  (Id. at ¶¶ 60–62.)

In November 2016, McClay resigned, and, in February 2017, Director Hissrich promoted Defendant Barone to Assistant Chief of the PBP and Deputy Director of the Department of Public Safety. (Id. at ¶¶ 77–79.) Plaintiff alleges that, in this new role, Defendant Barone hindered the audit and attempted to limit disclosure of its findings. (Id. at ¶ 58.) Plaintiff alleges Director Hissrich promoted Defendant Barone to these new positions "because of the audit." (Id. at ¶ 87.) Serving in these new dual roles, Plaintiff avers that Defendant Barone was "both subordinate and supervisory to the Chief of the PBP—making her one of, if not the most, influential decisionmakers in the PBP." (Id. at ¶ 80.) Plaintiff alleges that, after Defendant Barone was promoted, she initiated an investigation into Plaintiff because of the audit. (Id. at ¶ 97.) Defendant Barone directed Public Information Officer, Alicia George, to confront Plaintiff about the audit, during which Ms. George threated Plaintiff's career prospects and attempted to get Plaintiff to "cooperate with [ ] Barone" by signing a non-disclosure agreement. (Id. at ¶¶ 115–16.)

In addition to hindering the audit, Plaintiff avers that Defendant Barone used her new positions to "negatively influence[]" his career, resulting in Plaintiff receiving lesser performance reviews than previously. (Id. at ¶ 89.) Prior to McClay's resignation, Plaintiff received "the highest attainable levels in his performance reviews." (Id. at ¶ 88.)

Plaintiff avers that Defendant Barone subjected Plaintiff to "harassment." Specifically, "he was subjected to various direct and indirect threats by Commander Barone" because of his assignment to look into B-Three Solutions. (Id. at ¶ 63.) These included threatening his job at PBP and having other PBP officers threaten Plaintiff on her behalf. (Id. at ¶¶ 64–71.) Plaintiff alleges that Defendant Barone had other officers pressure Plaintiff to end the audit, and that those officers referred to Plaintiff using racial slurs, remarked that "no brown person" like Plaintiff

should be promoted, and stated that Plaintiff was not "American" because of his Indian heritage. (Id. at ¶¶ 72–77.)

Ultimately, Plaintiff states that Defendant Barone terminated his keycard access to PBP headquarters, terminated his involvement in PBP projects run out of PBP headquarters, and he was sent back to his regular shifts as a patrol officer. (Id. at ¶¶ 91, 93.) When Plaintiff asked about why these actions had been taken, Defendant Barone informed him he was "'done with the police department'" and that he "'will never be promoted.'" (Id. at ¶ 92.)

### 2. Plaintiff's Non-Promotion to Sergeant

Nonetheless, Plaintiff attempted to gain a promotion by taking the sergeant's examination. (Id. at ¶ 95.) Plaintiff alleges that he took the sergeant's examination and "scored number one in all categories, as well as number one overall for all qualified applicants within the PBP for the sergeant's position." (Id.) However, on November 20, 2017, Plaintiff was notified by Defendant Barone that he would not be promoted to sergeant. (Id. at ¶ 97.) Plaintiff alleges that eight other officers—none of whom are of Indian descent—were promoted to sergeant as of May of 2018. (Id. at ¶ 117.) Never before has the PBP failed to promote the patrol officer who has scored number one overall. (Id. at ¶ 98.)

Plaintiff avers that Defendant Barone "ordered" that he not be promoted in light of a pending investigation she initiated into the audit of B-Three Solutions. (Id. at ¶ 97.) Plaintiff states that in the past, qualified officers eligible for promotion were still promoted despite pending investigations. (Id. at ¶ 99.) Because of Defendant Barone, Plaintiff alleges that "he did not even receive a recommendation for sergeant" and he was never provided a hearing over his non-promotion. (Id. at ¶¶ 100–01.) Even after he was not promoted, Plaintiff avers that

Defendant Barone continued to take steps to ruin his career and discredit him in the community because of the audit.  (E.g., id. at ¶ 121.)

### 3.    Defendant Barone and Director Hissrich

As the Director of the Department of Public Safety, Director Hissrich oversees "the care, management, administration, and supervision of all police affairs of the PBP."  (Id. at ¶ 5.) Plaintiff asserts that Director Hissrich, alone or together with Defendant Barone, is a policymaker for the PBP with "final authority for all personnel decisions, including promotions." (Id.)[1]  After her promotion to Deputy Director of the Department of Public Safety, Plaintiff asserts that Defendant Barone became the second-highest ranking official in the PBP, and worked closely with Director Hissrich to make all personnel decisions.  (Id. at ¶¶ 82–84.) Plaintiff avers that in many instances, Director Hissrich delegated specific policymaking functions to Defendant Barone.  (Id. at ¶¶ 85, 86.)

Plaintiff avers that Director Hissrich and Defendant Barone were aware of Plaintiff's role in "auditing and investigating" B-Three Solutions and Defendant Barone's relationship with the B-Three Solutions.  (Id. at ¶¶ 53–54.)  Plaintiff alleges that Director Hissrich updated Defendant Barone on "all progressions and findings" of the audit of PBP's information technology systems "so that she could respond accordingly in retaliation" against Plaintiff.  (Id. at ¶ 55.)  Plaintiff states Director Hissrich and Defendant Barone were aware that B-Three Solution's performance was deficient.  (Id. at ¶ 56.)

Plaintiff avers that Director Hissrich and Defendant Barone were notified of the racist remarks made to him and about him and failed to act.  (E.g., id. at ¶ 74.)  Plaintiff states that

---

[1]  The City concedes that Director Hissrich is the official within the PBP with the authority to make decisions as to promotions.  (See City's Motion at 9.)

Director Hissrich was told by Defendant Barone that Plaintiff only scored number one overall because "he was 'Indian' and thus was given extra credit that 'Americans' were not given." (Id. at ¶ 106.) Plaintiff argues that Director Hissrich adopted the racially discriminatory comments of Defendant Barone and intentionally chose not to promote Plaintiff because of he was of Indian descent. (Id. at ¶¶ 108, 114.)

Plaintiff avers that Director Hissrich authorized and approved of Defendant Barone's decision to initiate an investigation of Plaintiff and the audit as a pretext for non-promotion. (Id. at ¶¶ 119–20.) Plaintiff states that Director Hissrich received e-mails regarding the decision not to promote him, reviewed the reports and memoranda prepared in connection with the audit, and that Director Hissrich was told this decision was made by Defendant Barone "because of the audit." (Id. at ¶¶ 102–05.)

**B.    ANALYSIS**

Plaintiff brings claims under Section 1983 and the Pennsylvania Whistleblower Act against all Defendants. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When faced with a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

**1.    Plaintiff's Section 1983 Claims**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States, and that the alleged deprivation was committed by a person acting under color of state law. See Mosca v. Cole, 217 F. App'x 158,

163 (3d Cir. 2007). Here, Plaintiff has alleged Defendants violated his Fourteenth Amendment Equal Protection rights because Plaintiff, the most qualified candidate for sergeant, was not promoted because of his race. (Am. Compl. at ¶¶ 124–28.)

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. "The central purpose of the Clause is to prevent the States from purposely discriminating between individuals on the basis of race." Johnson v. Fuentes, 704 F. App'x 61, 65 (3d Cir. 2017) (internal citations and quotation marks omitted). The elements of a valid § 1983 claim for a denial of Equal Protection based on intentional racial animus are that: (1) the plaintiff belongs to a protected class; (2) the defendant acted under color of state law; and (3) the defendant treated plaintiff differently because of his race. Id. There are multiple ways for a plaintiff to prove such a claim, including through race-based comments that show a discriminatory motive underlying an adverse employment action. Id. at 66 (citing Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 368–69 (3d Cir. 2008)).

Plaintiff's claims are brought against the City of Pittsburgh and Defendant Barone in her individual capacity. Where a municipality's "policy or custom" is contrary to federal law, the municipality is subject to liability under Section 1983. Kentucky v. Graham, 473 U.S. 159, 166 (1985). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). Where authorized decisionmakers adopt a particular course of action, it is a policy of the municipality. Id. On the other hand, to establish personal liability for Defendant Barone, Plaintiff must "show that the official, acting under color of state law, caused

the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Graham, 473 U.S. at 166).

Plaintiff's allegations in the Amended Complaint are plainly sufficient to survive both Defendants' Motions to Dismiss.

a.      City of Pittsburgh

In its Brief in Support of its Motion to Dismiss (hereinafter, "City's Brief," Doc. 27), the City states that there is no support for Plaintiff's claims that the PBP treats distinct groups of individuals categorically differently because of race. (City's Brief at 8.) The Court, however, reads the Amended Complaint as doing just that.

Plaintiff alleges that, at the time he was denied promotion, there were no other Indian police officers in the entire PBP. (Am. Compl. at ¶¶ 109–10.) Despite scoring number one overall on the sergeant's examination, he was not promoted. (Id. at 95.) Plaintiff alleges that Director Hissrich—who both parties agree is a final decisionmaker for purposes of liability— either made the decision not to promote Plaintiff with Defendant Barone or explicitly delegated that decision to Defendant Barone. This decision was made after Director Hissrich and Defendant Barone were made aware of racist remarks made about Plaintiff and did not act, (e.g., id. at 74), and after Defendant Barone made racist comments about Plaintiff, including implying that because he was Indian he was not American and not a competent police officer (e.g., id. at 106). Under either circumstance, the City could be liable for treating Plaintiff differently because of his race. See Pembaur, 475 U.S. at 482–83 ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by legislative enactment or may be delegated by an official who possesses such authority.").

As such, the City's Motion will be denied with respect to this Count.

        b.     Defendant Barone

In her Brief in Support of her Motion to Dismiss (hereinafter, "Barone's Brief," Doc. 29) Defendant Barone argues that Plaintiff's core allegations with respect to her are conclusory and lack factual support. (Barone's Brief at 9–13.) In particular, Defendant Barone argues that the direct statements Plaintiff alleges she made are "vague" and "do not logically or plausibly support" Plaintiff's claim of racial discrimination. (Id. at 10–11.) The Court begs to differ.

Plaintiff alleges that when he was not promoted, Defendant Barone "stated to colleagues and other staff members in Pittsburgh, including Director Hissrich, that Officer Chatterji only scored number one overall because he was 'Indian' and thus was given extra credit that 'Americans' were not given." (Am. Compl. at ¶ 106.) Plaintiff also avers that Defendant Barone told Director Hissrich and others that Plaintiff "was not promoted because of his incompetence because of his lack of understanding of 'American ways.'" (Id. at ¶ 107.)

There is nothing vague about the racial connotations of these alleged statements: that Plaintiff's score should be discredited—and he should not be promoted—because of his race. The statements directly link Plaintiff's race to being "un-American" and incompetent, i.e., Plaintiff is bad at his job because of his race. See Haynes v. W.C. Caye & Co., Inc., 52 F.3d 928, 931 (11th Cir. 1995) ("Indeed, a statement that members of a racial minority in general or women in general are simply not competent enough to do a particular job would seem to be a class example of direct evidence."). As these statements, if true, would demonstrate that Defendant Barone harbored racial animus towards Plaintiff, and that she treated him differently with respect to promotions because of his race, the Court will deny Defendant Barone's Motion.

## 2.    Plaintiff's Whistleblower Claims

Plaintiff also asserts that both Defendants violated the Pennsylvania Whistleblower Law, 43 Pa. C.S. §§ 1421–28, by not promoting him in retaliation for reporting the evidence of abuse, misuse, and loss of funds and resources relating to B-Three Solutions and Defendant Barone. (Am. Compl. at ¶¶ 124–28.)

The Whistleblower Law states "[n]o employer may discharge, threaten, or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or person acting on behalf of the employee makes a good faith report or is about to report . . . an instance of wrongdoing or waste by a public body or an instance of waste by any other employer." 43 Pa. C.S. § 1423(a). An "employer"[2] under the statute is any "public body" or "an individual" who "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to the public body." 43 Pa. C.S. § 1422. "Waste" is defined as an "employer's conduct or omissions which result in substantial abuse, misuse, destruction, or loss of funds or resources belonging to or derived from the Commonwealth or politic subdivision sources." Id.

"Causation under the Whistleblower Law is proved the same way as under Title VII and § 1983." Ali v. McClinton, No. 16-6373, 2017 WL 2588425, at *4 (E.D. Pa. June 14, 2017) (quoting Bayer v. City of Philadelphia, No. 13-6495, 2015 WL 9260007, at *7 (E.D. Pa. Dec. 17, 2015)). The Pennsylvania Supreme Court has held that all the Whistleblower Law's provisions

---

[2] While the City of Pittsburgh does not contest that it is an employer, Defendant Barone briefly does. (See Barone's Brief at 17.) The Court concludes, however, that Defendant Barone is "an individual" who "receives money from a public body to perform work" and therefore is an "employer" within the meaning of the statute. 43 Pa. C.S. § 1422.

must be "liberally construed to effect its salutary remedial object." Bailets v. Pennsylvania Tpk. Comm'n, 181 A.3d 324, 333 (Pa. 2018).

Preliminarily, the City argues Plaintiff's claim is barred by the statute of limitations. (City's Brief at 11–12.) The Whistleblower Law requires a civil action be brought within 180 days of the alleged violation. 43 Pa. C.S. § 1424(a). Plaintiff filed this action on February 14, 2018. The date he was notified of his non-promotion—November 20, 2017—is well within the 180-day window. (Am. Compl. at ¶ 97.)

a. City of Pittsburgh

The City advances two additional arguments supporting dismissal. First, it argues that Plaintiff has failed to allege the "waste" he reported with enough specificity to fall within the Whistleblower Law's protections. (City's Brief at 13.) The Court cannot agree.

Plaintiff has alleged that the audit he performed uncovered hundreds of thousands of dollars the PBP paid to B-Three Solutions for work that was never performed or could have been performed for free or a substantially reduced amount from another provider. (E.g., Am. Compl. at ¶¶ 29–42.) This is a "substantial . . . loss of funds" within the meaning of the Whistleblower Law. See Bifano v. Waymart Borough, 2016 U.S. Dist. LEXIS 177147, at *38–41 (denying motion to dismiss because the plaintiff alleged waste through allegations that borough police chief frequently avoided performing work at times he was billing the borough for doing his job); see also Bailets v. Pa. Tpk. Comm'n, 123 A.3d 300, 308 (Pa. 2015) (finding plaintiff's allegations that agency's "contract price may be artificially inflated for politically-connected vendor who need not compete on a level playing field or worry that its wasteful practice will be challenged by the procuring agency" are allegations of waste within meaning of Whistleblower Law).

Second, the City argues Plaintiff cannot show causation between the failure to promote him and his work on the audit. (City's Brief at 13–14). This too must be rejected. While Plaintiff does appear to state the bulk of his formal duties related to the audit's investigation stage ended when McClay resigned, the information remained relevant to all parties involved in this litigation well after that. Specifically, the Court agrees with Plaintiff that the alleged facts here are similar to those in <u>Bailets</u>, which the Court views to be persuasive. <u>See</u> 181 A.3d 324 (Pa. 2018). In <u>Bailets</u>, an employee managing financial systems reported irregularities in the awarding of contracts to two superiors after determining that the vendor with the highest bid— rather than the lowest—was awarded a contract. <u>Id.</u> at 326–27. He was warned to "not make waves" or "his job would be in jeopardy" and that the chosen vendor was "politically connected" and therefore the plaintiff should stop his complaints. <u>Id.</u> Several months later, the employee continued to raise concerns about the vendor and was reassigned to another department, while the superior who told him to stop complaining was promoted. <u>Id.</u> at 327. Shortly thereafter, the employee was fired. <u>Id.</u>

Like the plaintiff in <u>Bailets</u>, Plaintiff continued to voice complaints, which he alleges made him a target for retaliation by high ranking officials within the PBP. Plaintiff avers that there was an ongoing investigation *into him* because of the waste he uncovered (<u>see, e.g.</u>, Am. Compl. at ¶ 4), that this investigation was used as a reason not to promote him, (<u>id.</u> at ¶ 97), and that even after he was not promoted, attempts were made to discourage him from speaking about what he had learned. (<u>Id.</u> at ¶¶ 115–16.) In short, Plaintiff states that because of the waste of funds he uncovered and reported during the audit, he became a target for continued retaliation long after the results were published and the City Council passed its resolution. (<u>Id.</u> at ¶¶ 60– 61.) This amounts to "a pattern of antagonism coupled with timing to establish a causal link"

and suffices to survive the City's Motion.  Lauren W. ex rel Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

b.    Defendant Barone

In her Brief in Opposition, Barone makes two arguments in favor of dismissal.  Similar to her arguments regarding Plaintiff's Section 1983 claim, Defendant Barone states Plaintiff's allegations are conclusory and lacking in factual basis.  (Barone's Brief at 18.)  For the reasons already discussed, the Court rejects this argument outright.  The Amended Complaint is replete with specific allegations of Defendant Barone's retaliation against Plaintiff for his work on the audit.  (See, e.g., Am. Compl. at ¶¶ 64, 89–91, 97, 103.)

Second, Defendant Barone avers that because Plaintiff has not pleaded that she committed "a crime, actual fraud, actual malice, or willful misconduct," individual liability cannot be imposed.  (Id. at 19 (quoting 42 Pa. C.S. § 8550).)  This argument also is unavailing.

Generally, public employees are immune when sued in their personal capacities, but there are exceptions for, among other things, "willful misconduct."  Walker v. North Wales Borough, 395 F.Supp. 2d 219, 231 (E.D Pa. 2005) (discussing 42 Pa. C.S. § 8550).  To demonstrate an official committed willful misconduct, "a showing of an intention to do what is known to be wrong" must be made.  In re City of Philadelphia Litigation, 158 F.3d 723, 728 (3d Cir. 1998); see also Brockington v. City of Philadelphia, 354 F. Supp. 2d 563, 571 (E.D. Pa. 2005) (interpreting Renk v.City of Pittsburgh, 641 A.2d 289 (Pa. 1994) as allowing "willful misconduct" to be equated with intentional torts for non-police officials).

Plaintiff's pleading is sufficient under this standard.  Specifically, Plaintiff has alleged that Defendant Barone used her position to negatively impact his performance reviews, to negatively influence Director Hissrich, and ultimately to deny him a promotion because of the

reports he authored in connection with the audit.  (See, e.g., Am. Compl. at ¶¶ 81, 82, 87, 89, 90, 92, 97.)  Even after denying him a promotion because of the audit, Plaintiff alleges that Defendant Barone facilitated additional actions to attempt to silence him or else "his career would be ruined."  (Id. at ¶ 116.)  In sum, Plaintiff states that Defendant Barone made varied attempts to silence, discredit and demoralize him for the purpose of benefitting herself and allowing waste of funds to continue.  (E.g., id. at ¶ 56.)  This is sufficient at this stage to deprive Defendant Barone of immunity.  Cf. Walker, 395 F. Supp. 2d at 231 (finding official's conduct undertaken for the purpose of violating the plaintiff's rights sufficient to constitute willful misconduct).

## II.  ORDER

The Motions to Dismiss Plaintiff's Amended Complaint (Doc. 15) filed by Defendant City of Pittsburgh (Doc. 26) and Defendant Linda Barone (Doc. 28) are **DENIED**.   Both Defendants shall file their answers within 14 days of this Order.

IT IS SO ORDERED.

March 8, 2019                                        s\Cathy Bissoon_____
                                                    Cathy Bissoon
                                                    United States District Judge

cc (via ECF email notification):

All Counsel of Record